1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | SECURITIES AND EXCHANGE
COMMISSION,

CASE NO. 13cv319-GPC(JMA)

12

Plaintiff,

**ORDER DENYING PLAINTIFF'S**
***EX PARTE* APPLICATION FOR A**
**TEMPORARY RESTRAINING**
**ORDER; AND DENYING**
**PLAINTIFF'S *EX PARTE***
**APPLICATION TEMPORARILY**
**SEALING ENTIRE FILE**

13

vs.

14

15 | ABS MANAGER, LLC and GEORGE
CHARLES CODY PRICE,

16

Defendants,

17 | ABS FUND, LLC [ARIZONA]; ABS FUND,
LLC [CALIFORNIA]; CAPITAL ACCESS,
LLC; CAVAN PRIVATE EQUITY
HOLDINGS, LLC; and LUCKY STAR
EVENTS, LLC,

18

19

20

Relief Defendants.

21

22         On February 8, 2013, Plaintiff Securities and Exchange Commission filed a complaint along

23 with an *ex parte* application for a temporary restraining order ("TRO") freezing assets; appointing a

24 receiver over defendant ABS Manager, LLC and the entities it controls and manages; prohibiting the

25 destruction of documents; granting expedited discovery; and requiring an accounting.  The SEC also

26 filed an *ex parte* application for an order temporarily sealing the entire file until the asset freeze is

27 served or until February 26, 2013, whichever is sooner.  Defendants were not served with the

28 Complaint, *ex parte* applications or any supporting documents.  The Court decides the matters on the

1  papers and without oral argument.  See Civ. Local R. 7.1(d)(1).  Based on the reasoning below, the

2  Court DENIES Plaintiff's *ex parte* application for TRO to freeze assets, appoint a receiver, prohibit

3  the destruction of documents; expedite discovery and require an accounting.  The Court also DENIES

4  Plaintiffs' *ex parte* application to temporarily file entire case under seal.

5  **Background**

6  According to the Complaint, Defendant George Charles Cody Price ("Price"), through his

7  unregistered investment advisory company, Defendant ABS Manager, LLC ("ABS Manager"), raised

8  about $18.8 million dollars from about 35 investors nationwide to invest in three funds - Relief

9  Defendants ABS Fund, LLC in Arizona ("ABS Fund"), ABS Fund, LLC in California ("Platinum

10  Fund"), and Capital Access, LLC in Nevada ("Capital Access Fund").  (Compl. ¶ 2.)

11  For each fund offering, Defendants distributed a private placement memorandum, ("PPM"),

12  which described the terms of each Fund's offering.  (Id. ¶ 22.)  Starting in March 2009, Defendants

13  first offered investment in the ABS Fund.  (Id. ¶ 23.)  ABS Fund's PPM stated that the proceeds from

14  its offering would be used to purchase collateralized mortgage obligations ("CMOs").  (Id.)  CMOs

15  are mortgage based securities that pay the investors, depending on the "class" or "tranche" of CMO

16  they hold, the cash flows generated from the principal and interest payments on a pool of mortgages.

17  (Id. ¶ 3.)  However, the Funds did not buy ordinary CMOs but bought "Interest Only ("IOs") and

18  "Inverse Interest Only" ("Inverse IOs") CMO tranches.  (Id. ¶ 4.)  These types of CMOs are among

19  the riskiest forms of CMOs.  (Id.)  They only receive interest payments from the underlying mortgages

20  and not the principal.  (Id.)  As the mortgages in the pool are prepaid, paid down, re-financed or

21  defaulted, the interest-only income stream from those mortgages stop.  (Id.)

22  In order to attract investors, Defendants claims that these securities were "very safe", "very

23  secure" and "government bonds."  (Id.)  They falsely represented to the investors that the Funds were

24  "performing" "at or better" than 12-18% during this time and that the IOs and Inverse IOs held by the

25  Funds generated "returns" of 12.5% and 18%.  (Id. ¶ 5.)

26  In 2010, 2011 and 2012, the IOs and Inverse IOs that the Funds owned lost significant value.

27  (Id.)  Their annual returns never exceeded 3% and some investments had a return of negative 2%.  (Id.)

28  Moreover, the Funds were only required to pay a management fee to ABS Manager if their

1  returns exceeded 12.5% or 18%.  (Id. ¶ 6.)  No fees should have ever been paid during this period

2  because the actual annual returns never exceeded 3%.  (Id.)  However, Defendants caused the Funds

3  to pay Price and ABS Manager about a half a million dollars of Fund Assets during this time.  (Id.)

4  Moreover, a substantial portion of it was distributed to Defendants Cavan Private Equity Holdings,

5  a company owned by Price, and Lucky Star Events, LLC, a company owned by Price's wife.  (Id.)

6        Lastly, in radio shows and in the PPM for the Funds' offerings, Defendants misrepresented

7  Price's professional experience and grossly inflated the amounts of funds under management.  (Id. ¶

8  7.)

9        In the Complaint, Plaintiff alleges violations of sections 206(a) and 206(2) of the Investment

10  Advisors Act of 1940; violation of section 206(4) of the Investment Advisors Act of 1940 and Rule

11  206(4)-8; violations of section 17(a) of the Securities Act of 1933; violations of section 10(b) of the

12  Securities Exchange Act of 1934 and Rule 10b-5; and violations of section 20(a) of the Securities

13  Exchange Act of 1934.

14                                        **Discussion**

15        The purpose of a TRO is to preserve the *status quo* before a preliminary injunction hearing may

16  be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior

17  to judgment.  Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S.

18  423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a

19  preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.

20  7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a

21  likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the

22  absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4)

23  that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20

24  (2008).

25        Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be

26  balanced such that "serious questions" going to the merits and a balance of hardships that "tips

27  sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met.

28  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011).  A preliminary

1   injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

2   plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of

3   meeting all four Winter prongs.  See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653

4   F.3d 771, 776–77 (9th Cir. 2011).

5   **A.   *Ex Parte* Application for TRO Without Notice to Defendants**

6          Plaintiff seeks an *ex parte* TRO to freeze assets, appoint a receiver, prohibit the destruction of

7   documents, grant expedited discovery, and require an accounting without notice to Defendants.

8          Federal Rule of Civil Procedure 65(b)(1) provides that a "court may issue a temporary

9   restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific

10  facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss,

11  or damage will result to the movant before the adverse party can be heard in opposition; and (B) the

12  movant's attorney certifies in writing any efforts made to give notice and the reasons why it should

13  not be required."  Fed. R. Civ. P. 65.

14         The United States Supreme Court has held that there are stringent restrictions imposed by Rule

15  65 because "our entire jurisprudence runs counter to the notion of court action taken before reasonable

16  notice and an opportunity to be heard has been granted both sides of a dispute."  Granny Goose Foods,

17  Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Almeda County, 415 U.S.

18  423, 438-49 (1974).  "[C]ircumstances justifying the issuance of an ex parte order are extremely

19  limited."  Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  There are "a very

20  narrow band of cases in which ex parte orders are proper because notice to the defendant would render

21  fruitless the further prosecution of the action."  Id. (quoting American Can Co. v. Mansukhani, 742

22  F.2d 314, 322 (7th Cir. 1984)).  For example, to justify an ex parte proceeding where an alleged

23  infringer is likely to dispose of the infringing goods before the hearing, the "applicant must do more

24  than assert that the adverse party would dispose of evidence if given notice."  Id. (citation omitted).

25  "[P]laintiffs must show that defendants would have disregarded a direct court order and disposed of

26  the goods within the time it would take for a hearing . . . [and] must support such assertions by

27  showing that the adverse party has a history of disposing of evidence or violating court orders or that

28  persons similar to the adverse party have such a history."  Id. (citation omitted).

1    Here, Plaintiff has not addressed or complied with the *ex parte* provision under Federal Rule

2    of Civil Procedure 65.  In its application, Plaintiff states "Defendants may destroy evidence of their

3    violations and ongoing fraud."  (P's Memo. of Ps & As at 23.)  No declaration, even from counsel, has

4    been filed to support this assertion.  Moreover, Plaintiff must assert more than a conclusory allegation

5    that Defendants may dispose of evidence.  See McCord, 452 F.3d at 1131.  The specific TRO relief

6    sought all relate to preventing further dissipation and misappropriation of the investors' assets.

7    Accordingly, the Court DENIES Plaintiff's *ex parte* application for TRO to freeze assets, appoint a

8    receiver, prohibit the destruction of documents, grant expedited discovery, and request an accounting.

9    Plaintiff also filed an *ex parte* application to temporarily seal the case until the asset freeze is

10   served or until February 26, 2013, whichever occurs first.  Since the Court denied Plaintiff's *ex parte*

11   application for TRO, Plaintiff's request to temporarily file the entire case under seal is also DENIED.

**Conclusion**

13   Based on the above, the Court DENIES Plaintiff's *ex parte* application for temporary

14   restraining order to freeze assets, appoint a receiver, prohibit the destruction of documents; grant

15   expedited discovery; and request an accounting.  The Court also DENIES Plaintiff's *ex parte*

16   application to temporarily file the entire case under seal.

17   IT IS SO ORDERED.

19   DATED:  February 11, 2013

HON. GONZALO P. CURIEL
United States District Judge

- 5 -                                    [13cv1319-GPC(JMA)]